AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Apple iPhone with a small home button, cracked,<br>with no screen protector or phone case seized under FBI<br>case number 50D-SD-3712489 | )<br>)<br>)<br>)<br>)<br>)    Case No.   **23mj1573-BLM** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18, USC sec. 1591 | Sex Trafficking of Children or by Force, Fraud, and Coercion |
| 18, USC sec. 2422 | Coercion and Enticement of a Minor |

The application is based on these facts:

See Attached Affidavit of FBI Special Agent Lindsay Bennett, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Lindsay Bennett, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ May 1, 2023 _____

_____
*Judge's signature*

City and state:   San Diego, California

Hon. Barbara L. Major, U.S. Magistrate Judge
_____
*Printed name and title*

## <u>AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT</u>

I, Lindsay Bennett, Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby state as follows:

### INTRODUCTION

1.       I make this affidavit in support of an application for a search warrant to search the following electronic devices, as described in Attachment A-1 and A-2 and seize evidence of crimes, specifically, violations of Title 18, United States Code, Sections 1591 and 2422, as more particularly described in Attachments B-1 and B-2:

a. Black Apple iPhone, in an Otter Box case (**Target Device 1**) seized under FBI case number 50D-SD-3712489; and

b. Black Apple iPhone  with a small home button, cracked, with no screen protector or phone case (**Target Device 2**) seized under FBI case number 50D-SD-3712489; (collectively, the "**Target Devices**").

This search supports an investigation conducted by the FBI and San Diego Human Trafficking Task Force (SDHTTF) into **Gabriel Joseph Gonzalez (GONZALEZ)** who is suspected of committing one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2.       **Target Devices** were seized following the arrest of GONZALEZ for sex trafficking of a minor and the recovery of a sixteen-year-old female (JF1) on January 26, 2023. The **Target Devices** are currently in the possession of the San Diego Human Trafficking Task Force.

3.       Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

4.      The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not set forth each and every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause.

### EXPERIENCE AND TRAINING

5.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), United States Department of Justice. I have been a Special Agent since October 2019. I am currently assigned to the Child Exploitation Task Force of the San Diego Field Office, where I assist in the investigation of crimes concerning child exploitation and human trafficking. I have been employed by the FBI since June of 2014 and served in several different support roles prior to becoming a Special Agent.

6.      My experience as an FBI Special Agent has included the investigation of cases involving the use of computers and the internet to commit crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of cellular telephones, social media accounts, and other electronic devices.

7.     Through my training, experience, and consultation with other law enforcement officers, I have learned that:

a.     Individuals involved in illicit commercial sex maintain records, including electronic files, related to their illicit business on computers and computer servers hosting internet applications such as electronic mail (email) and personal social networking web pages;

b.     Individuals involved in illicit commercial sex often solicit clients through electronic advertisements and other media, such as Craigslist, MegaPersonals, Skipthegames, and other social media sites accessed on cellular telephones and computers;

c.     Individuals involved in illicit commercial sex maintain records of correspondence relating to client contact information as well as travel and lodging arrangements involved in such illegal activity;

d.     Individuals involved in illicit commercial sex maintain documents and files containing names of associates and/or coconspirators involved in prostitution;

e.     Individuals involved in illicit commercial sex maintain financial records, bank statements, money orders, money order receipts, and cash that are evidence of payments made in conjunction with prostitution;

f.     Individuals involved in illicit commercial sex use cellular telephones, tablet, desktop, removal hard drives and flash drives, and notebook computers and maintain these items on their person and/or in their residences and/or vehicles. Individuals involved in illicit commercial sex use cellular telephones, tablet, notebook computers, and removable storage media to increase their mobility, coordinate illicit activities, and to provide pimps and prostitutes with instant access to phone calls, voice messages, text messages, instant messaging (IM) and internet based correspondence. Individuals involved in illicit commercial sex will use

multiple cellphones, tablets, notebook computers, and phone numbers in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These electronic devices contain wire and electronic data concerning telephonic contact records, text messages, and electronic mail messages with co-conspirators and clients, as well as telephone books containing contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize digital cameras, cellular telephones, desktop and notebook computers with photograph and video capabilities to take photographs and videos of themselves as well as other coconspirators for the purpose of electronic advertising and promotion of prostitution. Moreover, I know that digital evidence can be stored on a variety of systems and storage devices including: hard disk drives, DVD ROMS, pagers, money chips, thumb drives, flash drives, and portable hard drives;

g.      Individuals involved in illicit commercial sex use social media sites like Facebook or Instagram to find clients and prostitutes. They use Facebook messaging applications to communicate with prostitutes and customers to increase their mobility and coordinate illicit activities. Individuals involved in illicit commercial sex will often use multiple social media accounts in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These social media accounts contain electronic data concerning instant messaging, electronic mail and social media addresses of co-conspirators and clients, including contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize social media to store and display, commonly known as posting, photographs, videos, and text of themselves as well as other co-conspirators for the purpose of electronic advertising and promotion of prostitution.

8.      Based upon my experience and training, and the experience and training of other agents with whom I have communicated, the evidence of illegal

activity described above in paragraphs "a" through "g" is maintained by individuals involved in illicit commercial sex in property that they and their associates live in and operate as well as on online accounts including email accounts, which can be accessed on computers and cellular telephones.

## FACTS IN SUPPORT OF PROBABLE CAUSE

9.      On January 26, 2023, a 16-year-old female, hereafter referred to as "JF1", called 9-1-1 and reported she was being trafficked and threatened by her pimp "Gabriel." Gabriel was later identified as Gabriel Joseph GONZALEZ, hereinafter "GONZALEZ". San Diego Police Department (SDPD) patrol officers responded to the call and contacted JF1 at 2100 Woden Street[1], San Diego, CA 92113. JF1 was transported to SDPD's Central Division and SDHTTF Task Force Officers (TFO) responded for the interview.

10.     Prior to the interview, JF1 provided verbal consent and her passcode to her cell phone for Investigators. Investigators conducted a cursory search of her cell phone and saw activity consistent with pimping and pandering. Investigators reviewed messages between a contact stored as "L" in JF1's cellphone, with a listed phone number of XXX-XXX-7447. According to subscriber information, GONZALEZ was the subscriber for telephone number XXX-XXX-7447. The messages discussed JF1 going on dates[2] and collecting payments for those dates.

### *Interview of JF1*

11.     Investigators interviewed JF1. JF1 identified her trafficker as "Gonzo" and Gabriel Gonzalez, providing the correct date of birth for GONZALEZ. JF1 had known GONZALEZ for about two years, since

---

[1] Woden St. is an area in San Diego County known for prolific street-based commercial sex trafficking.

[2] The term date to refer to the exchange when prostitution takes place, or the activity of prostitution.

5

approximately November 2021. She knew his phone number to be XXX-XXX-7447 for the entirety of their association; the same telephone number saved in her cell phone as "L." Investigators obtained toll records for XXX-XXX-7447 showing it was Dec 19, 2021. She stated she initially met him through Instagram after responding to his post soliciting for people wanting to make money. This was GONZALEZ's recruitment of JF1 to engage in prostitution under his control. JF1 stated GONZALEZ's Instagram username was "paygonzo". JF1 described GONZALEZ as being the one who introduced her and taught her about the pimping and prostitution subculture.

12.     JF1 stated she ran away from her group home in Los Angeles County on January 1, 2023 to be with GONZALEZ. After losing $3,000 in prostitution earnings from one sex buyer, she returned to her group home. GONZALEZ learned about what had occurred and was upset that JF1 had left him to go back to her group home. JF1 recalled that on around January 20, 2023, GONZALEZ and his cousin, only known to JF1 as D███ or A█████, arrived at her group home and demanded she leave with him. She did not want to go but was fearful that GONZALEZ would send other females in the group home to assault her as he has done in the past; so she felt forced to go with him. JF1 stated D███/A█████ drove and dropped her and GONZALEZ off in San Diego. JF1 stated as punishment for previously leaving GONZALEZ, he required her to walk the blade[3] for 24 hours. He did not, nor had in the past, set a quota[4] for JF1, but did tell her she needed to earn enough commercial sex proceeds in order to purchase a hotel room. After

---

[3] The term blade refers to a public area, commonly a street or strip, where solicitation for prostitution is known to occur.
[4] The term quota refers to a set amount of money that a trafficking victim must make each night before she can come "home."

about 24 hours, JF1 and GONZALEZ obtained a room at the Studio 6 hotel; JF1 believed GONZALEZ purchased the room in his name.

13.     JF1 stated she walked the blade, both Dalbergia Street in San Diego and Roosevelt Avenue in National City every day from January 20, 2023 until being picked up by law enforcement on the morning of January 26, 2023, with the exception of January 23, 2023, as that was her 16th birthday. JF1 stated GONZALEZ's family came to San Diego on the 23rd with the intent to spend the day at Sea World. JF1 stated that both she and GONZALEZ would collectively decide when JF1 would go to the blade and for how long she would be required to work the blade.

14.     JF1 stated when she would arrange a prostitution encounter with a sex buyer (a "date") from the blade, she and the sex buyer would return to the hotel room for the date. JF1 stated initially GONZALEZ would leave the room and wait outside, but ultimately, he began hiding in the bathroom and directed JF1 to tell the sex buyer her "home girl" was in the bathroom showering. JF1 stated GONZALEZ would stay nearby to act as her protection in the case of an aggressive or violent sex buyer. JF1 stated the protection was not from other pimps as JF1 was required to keep her head down to avoid her getting recruited by another pimp; the protection is specifically from sex buyers.

15.     JF1 stated she was required to give all her commercial sex earnings to GONZALEZ. She stated GONZALEZ would hold the money to purchase whatever either of them needed, to include food, clothing, and hotels. JF1 stated GONZALEZ received about $1,000 monthly as a rental assistance stipend. However, in January 2023, he had to use that money to repay his mother. JF1 stated GONZALEZ was otherwise unemployed and had no other source of income. JF1 stated GONZALEZ knew her only source of income was from commercial sex activity, and she had no other source of income.

16.     JF1 stated GONZALEZ was aware of her age; he knew this due to a violent incident in February 2022. JF1 recalled on that date GONZALEZ stole her phone from her and saw her personal identifying information. Additionally, he called JF1's brother and mother at this time also resulting in him becoming aware of her age. JF1 added that the two again talked about her age in May 2022. Lastly, JF1 stated that due to her age, GONZALEZ would not allow her to publicly communicate with him on social media; however, the two would exchange direct messages on Instagram through GONZALEZ's Instagram account and JF1's spam Instagram account[5].

17.     Regarding the violent incident in February 2022, JF1 disclosed that she had been working under his control at the time, but prior to that he was not aware of her age. JF1 stated that while working the blade on Figueroa Avenue in Los Angeles, GONZALEZ approached her from behind and began striking the back of her head with an open hand. She stated he did not leave marks and described as a soft slap. She did not go into detail about the impetus for the attack. However, she described that three other times GONZALEZ had slapped her across the face in the same manner, but not hard enough to leave marks. JF1 stated this would occur as he would typically use her phone frequently and for long periods. Upon questioning, she stated he used her phone to talk to sex buyers and arrange prostitution dates for JF1 as she refused to talk to the sex buyers herself. She stated that when she would refuse to give her phone to GONZALEZ, he would pull her hair for her to relinquish control of her phone due to the pain. JF1 stated on another occasion, GONZALEZ had the mother of his child and another female subject jump JF1, due to her trying to leave GONZALEZ.

[5] A spam Instagram account is a secondary private account created specifically for the purpose of sharing personal, raw or unpolished images or videos with an exclusive niche or group of people or friends.

Case 3:23-mj-01573-BLM   Document 1   Filed 05/03/23   PageID.10   Page 10 of 20

18.   JF1 stated that in addition to walking the blade, GONZALEZ also posted commercial sex ads of JF1 on the website www.megapersonals.eu[6], using JF1's phone. JF1 stated that he did not have any dates in San Diego from her ads. JF1 added that she would also engage in dates through a Tinder profile picturing her.

19.   Regarding JF1's call to 9-1-1 on the morning of January 26, 2023, JF1 stated she and GONZALEZ got into an argument about her phone as he had drained the battery. She left to go to the blade and wanted to take her phone while he wanted her to leave it behind. She ultimately took her phone, and in response he logged into her Instagram account and changed the passcode. When she discovered this, she began texting him that she was leaving. As a result, he began threatening her which resulted in JF1 call 9-1-1.

20.   JF1 told Investigators GONZALEZ was stored in her phone as "L" which had no particular meaning. She stated her messages only go back to Sunday (January 22, 2023) as GONZALEZ instructed her to delete their messages when he noticed police presence on the blade that day. When asked about prostitution, JF1 essentially stated, "I don't like doing it but I do it for him", adding that she knows giving him her earnings helps him.

21.   After the interview, Investigators searched JF1's cellular telephone and found approximately 20 missed calls from "L", received calls from "L" and calls from a "No Caller ID" during the morning of January 26, 223 when JF1 called 9-1-1. Investigators identified a recent text message exchange between "L" and JF1 from January 22, 2023 to January 26, 2023 that, in my training and experience, indicated GONZALEZ was directing JF1's commercial sex activities. For

---

[6] Megapersonals.eu is a website operating in interstate commerce that is used to post advertisements offering commercial sex.

example, GONZALEZ states, "Ur going to Dalbergia?", "U on the same date ?", and "For how much,", GONZALEZ is requesting JF1 provide an update on her whereabouts. I know Dalbergia St. is an area in San Diego County known for prolific street-based commercial sex trafficking. JF1 asks, "120 head ?" Based on my training and experience, I know that JF1 is asking GONZALEZ if $120 appropriate to charge a sex buyer for oral copulation.

### *Arrest of GONZALEZ*

22.    On January 26, 2023, SDHTTF TFOs responded to Studio 6 Motel to conduct surveillance on hotel room #229. SDHTTF TFO obtained Studio 6's hotel registration which confirmed GONZALEZ checked into the hotel on January 21, 2023 at approximately 5:42 AM and provided a copy of his California driver's license at check in. According to JF1, GONZALEZ was expected to leave on January 26, 2023 around 11:00 AM for check-out. At approximately 10:40 AM, SDHTTF TFOs observed GONZALEZ exit hotel room #229, look around and then re-enter the room. At approximately 11:20 AM, GONZALEZ exited hotel room #229 and walked to the Studio 6 lobby. National City Police Department patrol officers contacted and arrested GONZALEZ for 236.1(c)(1) PC: Human Trafficking of a Minor.    Investigators seized the **Target Devices** from GONZALEZ's front left pants pocket. **Target Device 1** had a photo of GONZALEZ with a small child as the background screen. GONZALEZ was transported to SDPD Headquarters, 1401 Broadway, San Diego, CA 92101 for a custodial interview.

23.    On January 26, 2023, at approximately 1:48 PM, investigators requested and obtained authorization to search hotel room #229, pursuant to California State search warrant #2301261249-CHP-RC-SW-OR. During the search, TFOs seized property belonging to JF1, multiple condoms, a California driver's license belonging to another unknown female (hereinafter "AF1"), drugs,

and domain and control documents belonging to GONZALEZ. The items were seized in accordance with the search warrant and later logged into evidence.

*Gonzalez's Statements*

24.    On January 26, 2023, GONZALEZ waived his Miranda Rights and agreed to speak with investigators. GONZALEZ stated his cousin "Moe" dropped him off in San Diego approximately one to three days ago (at the time of the interview). GONZALEZ could not recall the exact date arriving in San Diego, but stated he traveled alone. GONZALEZ purpose for traveling to San Diego was to visit Sea World and look for places to live. GONZALEZ stated he was looking to move to San Diego.

25.    GONZALEZ stated when he woke up on January 26, 2023, he went to the beach before 8:00 AM. Then he arrived back at the hotel room where GONZALEZ remained the rest of the day before being contacted by the police.

26.    When confronted for being untruthful, GONZALEZ elected to not provide any additional statements until a lawyer was present. Investigators terminated the interview.

*JF1's Previous Encounters with Law Enforcement*

27.    On August 10th, 2022, the FBI and the SDHTTF participated in the FBI's national initiative, Operation Cross Country (OCC). The purpose of OCC was to identify, rescue, and recover underage victims of the commercial sex trade as well as identify, arrest, and prosecute commercial sex traffickers. As part of this operation, undercover (UC) law enforcement officers posed as sex buyers, or "johns," to locate active online advertisements of individuals appearing to be minors offering commercial sex services in San Diego, California. UCs then directed these individuals to a hotel in the Southern District of California, where rooms were reserved to carry out the operation. TFOs and SDPD uniformed officers set up surveillance in and around the hotel to watch for and detect

individuals arriving for their commercial sex dates or any individuals believed to be acting as sex traffickers once a victim was dropped off at the hotel.

28. On August 10th, 2022, at approximately 8:56 PM, a UC officer contacted a phone number listed in the advertisement using a recorded phone line. During the communications, the UC officer negotiated with the user of the phone, a female later identified as JF1, at the time as a 15-year-old runaway, to receive sexual favors in exchange for money; specifically, "full service" for one hour in exchange for $300.00. The UC officer instructed the user of the phone to meet at the hotel.

29. On August 10th, 2022, at about 9:51 PM, JF1 arrived at the hotel. JF1 was observed by law enforcement surveillance units exiting the backseat of a Toyota Corolla bearing California license plates. JF1 was observed as she proceeded to the hotel room as directed by the UC officer. JF1 knocked on the hotel room door and met with a UC officer, who allowed JF1 to enter the room. JF1 was then contacted by law enforcement wearing identifiable clothing/outer-vest marked POLICE. JF1 was found to be in possession of a cellular telephone and a Super 8 hotel key card, both of which were seized. JF1's clothing and physical description matched that of the female seen by surveillance units exiting the backseat of the Toyota Corolla.

30. JF1 was interviewed by TFOs. During the interview, she consented to a search of the cellular telephone that was with her when she was contacted by law enforcement. After the interview, Investigators searched her cellular telephone and found text messages indicating JF1 was being directed by a pimp to engage in commercial sex activities.

31. Investigators downloaded JF1's cell phone and searched JF1's phone download. Investigators located text messages between JF1 and telephone number xxx-xxx-7447, associated to GONZALEZ. In the text message exchange, JF1 tells

"Gonzo" he pimped her out. According the JF1's statement during the interview on January 26, 2023, she refers to GONZALEZ as "Gonzo." Based on my training and experience, JF1 and GONZALEZ communicate by means of a cellphone as a method of communication.

### *Subsequent Investigation of the Target Devices*

32.     Pursuant to an administrative subpoena, investigators obtained subscriber records from T-Mobile for the XXX-XXX-7447 phone number. T-Mobile records listed the same International Mobile Equipment Identifier (IMEI) number for the XXX-XXX-7447 phone number from September 11, 2022 through January 26, 2022.

33.     On March 21, 2023, JF1 asked about the return of her phone. Because JF1 had a phone with her when she interviewed on January 26, 2023, JF1 was asked to clarify what she meant. JF1 stated that she had another device on January 26, 2023 and that she had left one of them near the TV in the motel room that JF1 had been sharing with GONZALEZ. JF1 described the second device that she had left in the hotel room as a black iPhone 7 with a small home button, cracked, with no screen protector or phone case, consistent with the description on **Target Device 2**. JF1 provided possible passcodes for **Target Device 2**, none of which unlocked it. JF1 advised that if the passcodes did not work, then GONZALEZ likely changed the passcode.

34.     Based on the facts of this case, I believe that evidence of sex trafficking crimes may be found on the **Target Devices**.  Additionally, the search of the **Target Devices** may also identify other individuals engaged in sex trafficking.

### **METHODOLOGY**

35.     It is not possible to determine, merely by knowing the mobile electronic device's make, model and serial number, the nature and types of services

to which the device is subscribed and the nature of the data stored on the device. Mobile electronic devices, including cellular telephones and tablets, can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers and installable software now allow for their subscribers and users to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many mobile electronic devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some mobile electronic device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

36.    Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

37.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## GENUINE RISK OF DESTRUCTION OF DATA

38.     Based upon my experience and training, and the experience and training of other law enforcement agents with whom I have communicated, electronically stored data may be permanently deleted or modified by users possessing basic computer skills. In this case, no genuine risk of destruction exists as the property to be searched is already in the custody of law enforcement personnel.

## PRIOR ATTEMPTS TO OBTAIN DATA

39.     Investigators previously attempted to unlock **Target Device 2** utilizing passcodes provided by JF1. Those attempts were unsuccessful. No prior attempts have been made by law enforcement to attempt to obtain data from **Target Device 1**.

//
//
//
//
//
//
//
//
//

**CONCLUSION**

40.    Based on the foregoing, I believe there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, 18 U.S.C. §§ 1591 and 2422 as described in Attachments B-1 and B-2 will be found in the properties to be searched, as provided in Attachments A-1 and A-2.

_____

Lindsay Bennett
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 1st day of May, 2023.

_____

HONORABLE BARBARA L. MAJOR
United States Magistrate Judge

16

## **ATTACHMENT A-2**

## **ITEMS TO BE SEARCHED**

The property/items to be searched is/are described as follows:

Black Apple iPhone with a small home button, cracked, with no screen protector

or phone case **(Target Device 2)** seized under FBI case number 50D-SD-

3712489

Target Device 2 is currently being held at the San Diego Human Trafficking Task

Force, located at 9425 Chesapeake Drive, San Diego, CA, 92123.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## ATTACHMENT B-2
## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, video, telephone numbers, contact information, web browsing history, documents, data stored within applications, and location data, for the period from September 11, 2022 up to and including the date of this warrant:

i.  tending to indicate efforts to recruit, entice, harbor, transport, provide, obtain, or maintain a person for the purposes of engaging in a commercial sex act;

j.  tending to identify accounts, facilities, storage devices, and/or services— such as email addresses, IP addresses, and phone numbers—used to facilitate human trafficking;

k.  tending to identify co-conspirators, criminal associates, or others involved in human trafficking;

l.  tending to identify funding sources, bank accounts, and financing methods involved in human trafficking;

m.    tending to show efforts to solicit commercial sex acts on websites including but not limited to backpage.com or craigslist.com;

n.    tending to identify travel to or presence at locations used for commercial sex acts;

o.    tending to identify the user of, or persons with control over or access to, the subject phone; and/or

p.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violation of Title 18, United States Code, Sections 1591 and 2422.**

The seizure and search of the cellular phones shall follow the procedures outlined in the methodology section in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phones may be searched for the evidence above.